[File No. 6051.]

HERBERT B. SANSOM, Doing Business Under the Firm Name and Style of Patent Law Reporters, Appellant, v. DAVID LEVICH and Herman Diamond, Individually, and as Copartners Under the Firm Name and Style of Chain Grocery Company, Respondents.

(244 N. W. 23.)

568

Opinion filed August 26, 1932.

*Robert H. Bosard,* for appellant.

*F. J. Funke,* for respondents.

NUESSLE, J. This is an action to recover for a transcript sold and delivered under a written contract.

The complaint sets out the alleged contract, the delivery of the transcript thereunder, and the refusal of the defendants to pay. The answer denies the contract and alleges that while a certain transcript was sent to the defendants it was returned as soon as the defendants ascertained what it was.

The case was tried to a jury. The jury returned a verdict for the defendants. Plaintiff moved for a new trial. The motion was denied. Judgment was entered on the verdict. From the order denying his motion for a new trial and from the judgment, plaintiff appeals, grounding his appeal wholly upon the insufficiency of the evidence to sustain the verdict.

It appears from the record that the plaintiff is a court stenographer doing business in New York under the name and style of Patent Law Reporters. The defendants are a copartnership engaged in the grocery business at Minot, North Dakota. In October and November, 1930, plaintiff was engaged in the preparation and sale of copies of the transcript in a case in the Supreme Court of the District of Columbia known as the Packers' Consent Decree Case. He mailed the defendants a postcard, addressed to them at Minot, North Dakota. This card had printed on its back, words and figures as follows:

*"Famous Packers' Consent Decree Hearings.*

Swift and Armour now seek to operate retail meat markets, cold storage warehouses, stockyard companies and terminal railroads, and deal in 114 food products.

The interest in this case is so great that Associations of Wholesale Grocers, Livestock, Wool Growers and Retail Meat Dealers have tried to intervene. The result may vitally affect your business.

Send for your copy of transcript today so we will know *how many copies to make.*

Patent Law Reporters, Armour & Co., et al. v. U. S. A.

154 Nassau St., New York. Supreme Court, Dist. of Columbia.

"Please prepare and send us — copies of transcript of above case, for which we agree to pay 25 cents per page.

Firm ..................... Address .....................

By (Signature) ................ Title ...................''

This card was returned to the plaintiff in one of the defendants'' envelopes, postmarked at Minot, North Dakota, November 1, 1930. When it was so returned the blanks were filled in and the card was signed in ink as follows:

"Please prepare and send us 1 copies of transcript of above case, for which we agree to pay 25 cents per page.

(Firm) Chain Groc. Co. (Address) Minot, N. Dak.

By (Signature) Dave Levich (Title) Manager & Owner."

On November 5th, plaintiff acknowledged receipt of the card and notified the defendants that the transcript would be prepared and mailed as soon as possible. The case was not then concluded. He said nothing as to the probable length of the transcript. Thereafter, beginning January 15th and ending on March 5th, 1931, fourteen packages containing the transcript, in all over 4900 pages, were mailed to and received by the defendants. On March 9th, plaintiff billed the defendants for this transcript at twenty-five cents per page in accordance with the terms on the card. On March 13th, the defendant, Dave Levich, wrote plaintiff saying that he did not want the transcript as it was of no use to him and inquired where he should send it. Plaintiff, however, refused to accept the transcript back and pressed for payment, finally bringing this action.

The single matter in controversy here is as to whether the defendant

Dave Levich signed the card which plaintiff claims to have received through the mails in one of defendants' envelopes, postmarked at Minot on November 1, 1930.

The record is brief. The plaintiff testified to mailing the card to defendants, the receipt of the envelope containing the card signed as above set out, his acknowledgment thereof with notice that the transcript would be sent as soon as possible, the sending of the transcript, the billing of the defendants therefor and the receipt of the defendants' letter of March 13th. Before this action was brought plaintiff's attorney talked with the defendant Dave Levich about the matter. He testified that Levich said he had signed the card in question but thought that the transcript included only one page. Levich, called as a witness in behalf of the defendants, testified that in November, 1930, he had signed and mailed a card to the plaintiff but that such card was a double postcard, whereas the card in question was not. On cross examination he said that the signature on the latter looked like his signature and that he would not testify that it was not his. He further testified that in January before any portion of the transcript was mailed to him he left Minot on an extended trip and did not return until the following March. Then he found the several parcels of mail containing the transcript piled up unopened awaiting him.

The trial court denied the plaintiff's motion for a new trial. This ruling was erroneous. On the record as made it is impossible to escape the conclusion that the signature on the card is that of the defendant Levich. Since this is so the evidence does not support the verdict as returned and the motion should have been granted. Accordingly the judgment and order must be reversed. Of course we can do no more than order a new trial for there was no motion for a directed verdict. In any event, the mere fact that the evidence was such that the trial court should have granted a motion for a directed verdict had it been made, or ordered a new trial on the ground of insufficiency of the evidence to sustain the verdict, would not warrant this court in ordering judgment for the plaintiff. It must also clearly appear that there is no reasonable probability that the defects in or objections to the proof necessary to support the verdict may be remedied upon another trial. Nor is such a judgment warranted because some of the evidence offered, or which defendant may be able to produce upon a new trial, is variant

from and inadmissible under the allegations of the answer; but it must further appear that no amendment of the answer can properly be made making such testimony competent. First State Bank v. Kelly, 30 N. D. 84, 152 N. W. 125, Ann. Cas. 1917D, 1044, and cases cited. It appears from the record that the plaintiff solicited the order by showing the importance of the proceeding, the general interest in it and its possible effect upon the business of the person solicited. The defendant was urged to send for his "copy of transcript today" and the order is contained in the one sentence "Please prepare and send us — copies of transcript of above case, for which we agree to pay 25 cents per page." If the defendant is required to pay for a transcript of the hearing, in this case running to more than 4900 pages, at twenty-five cents per page, he would have been equally bound if the transcript were ten times as long. The plaintiff had means of knowing or approximating the probable length of such transcript which were not available to the defendant. The defendant in receiving such a solicitation might well have been justified in assuming that the transcript would be of such reasonable length as to entail an expense commensurate with his interest measured by the probable or possible effect upon his small business. "Transcript" is an elastic term which the plaintiff might well have had reason to know might not be understood by a small business man in a remote place to mean a voluminous document of thousands of pages. Yet he was silent as to this matter and so worded his solicitation as to disclose nothing which might tend to apprise one reading it as to what the transcript in fact would be. Accordingly, it may be that on a retrial of this case the jury may find under these circumstances that in fact there was no contract (Williston, Contr. §§ 603–605), or, under appropriate pleadings, if a contract resulted that the transaction was so tainted with fraud as to render it voidable. See 26 C. J. 1021, et seq.

Judgment and order reversed.

CHRISTIANSON, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.